Patricia **BIRKBECK**, as Personal Representative of the Estate of Alan Birkbeck, Deceased; J.C. Richardson, Plaintiffs–Appellants,

v.

**MARVEL LIGHTING CORPORATION;** Bruce T. Fennessey, Defendants–Appellees.

No. 93–1856.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1994.

Decided July 22, 1994.

---

**ARGUED:** Ray P. McClain, Charleston, SC, for appellants. Lovic Alton Brooks, III,

Constangy, Brooks & Smith, Columbia, SC, for appellees.

**ON BRIEF:** Herbert W. Louthian, Louthian & Louthian, Columbia, SC, for appellants.

Kristine L. Thompson, Constangy, Brooks & Smith, Columbia, SC, for appellees.

Before WILKINSON and MICHAEL, Circuit Judges, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge MICHAEL and Senior Judge DUPREE joined.

## OPINION

WILKINSON, Circuit Judge:

In this case we must decide whether the district court appropriately granted judgment as a matter of law to defendants in an Age Discrimination in Employment Act case. *See* 29 U.S.C. § 621 *et seq.* Because we find that plaintiffs lacked any substantial evidence of age bias and because defendants demonstrated that their actions were a legitimate response to difficult economic circumstances, we affirm the judgment of the district court.

## I.

Plaintiffs Alan Birkbeck and J.C. Richardson both held salaried, supervisory positions at Marvel Lighting Corporation in Mullins, South Carolina. Marvel is a privately owned company that manufactures light bulbs. Birkbeck was the manager of the aluminizing department, and Richardson served as a production supervisor. In March 1989, Marvel discharged both plaintiffs. Bruce Fennessey, a Marvel vice-president, was primarily responsible for the layoff decisions. At the time of the layoffs, Birkbeck was 62 years old and Richardson was 55.

Both plaintiffs filed suit against Marvel in South Carolina federal court. The complaint, which was subsequently amended to add Fennessey as a defendant, alleged that the defendants had "negligently, recklessly, or willfully deprived Plaintiffs of equal employment opportunities" because of their age.

This action, Birkbeck and Richardson argued, violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA").

The case was tried to a jury in April 1993. At trial, Birkbeck and Richardson claimed that they were both performing adequately at the time of the discharge, and noted that they were two of the oldest supervisors working on the plant floor. Plaintiffs also claimed that statistical evidence showed that the layoffs at Marvel disproportionately impacted older workers. Birkbeck testified that, at one point several years before the layoffs, Fennessey had told him, "there comes a time when we have to make way for younger people," and argued that this comment demonstrated age bias. Birkbeck further contended that his termination was related to the fact that his pension would have vested in three years. Richardson maintained that younger supervisors with poorer performance records were retained in the same position he had held.

Defendants responded that economic necessity dictated the company's actions and that the firings had nothing to do with age. Marvel argued that it was in the midst of a price war with larger competitors in its industry, and maintained that the entire aluminizing department, including Birkbeck, had been laid off. It also argued that Richardson's job had been consolidated with another supervisory position, and that the supervisor who had been retained in that position was himself 53 years old.

The jury ultimately found in favor of both plaintiffs and awarded $113,755.65 to Richardson and $60,077 to Birkbeck. However, the jury declined to find that any willful violation of the ADEA had occurred. Defendants then moved for judgment as a matter of law or for a new trial, and plaintiffs moved for a new trial on the issue of whether there had been a willful violation of the ADEA.

The district court granted the defendants' motion for judgment as a matter of law in June 1993. The court found both that no ADEA prima facie case had been made out by the plaintiffs and that the defendants had articulated nonpretextual reasons for the actions taken. Regarding Birkbeck, the court

found that no ADEA violation had been shown because (1) Marvel shut down the entire aluminizing department and there was no evidence that Birkbeck's position as an aluminizing department manager had been filled by a younger person, (2) Fennessey's statement was a simple "truism" and could not be considered evidence of age discrimination, and (3) there was no evidence that Marvel's actions were related to the fact that Birkbeck's pension benefits would have vested within the next several years.

Regarding Richardson, the district court found that no discrimination could be shown because (1) his supervisory position had been combined with another position, (2) the person who remained in the new position was only two years younger than Richardson, and (3) the statistics regarding the employment pattern at the company "show[ed] a balanced workforce, at least in terms of age, not a policy of discrimination based on age." Finally, the district court found that, even if a prima facie case could have been established, the economic problems Marvel was experiencing demonstrated that "plaintiffs were victims of economic necessity, not illegal discrimination."

Plaintiffs now appeal.

## II.

As an initial matter, we must decide whether Fennessey is a proper defendant in this action. The ADEA makes it unlawful for an "employer" to discriminate on the basis of age against its employees. *See* 29 U.S.C. § 623(a). The Act defines the term "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.... The term also means (1) any agent of such a person ..." 29 U.S.C. § 630(b).

The few courts that have found individual liability under the ADEA tend to seize on the use of the word "agent" in § 630(b). *See,*

*e.g., House v. Cannon Mills Co.,* 713 F.Supp. 159, 160–62 (M.D.N.C.1988). They have reasoned that, under the ADEA, those with the authority to make discharge decisions for their employers are individually liable as their employer's "agents." *Id.* at 161–62.

▆▆▆▆ While plaintiffs urge us to adopt this view, we find its rationale unpersuasive. Section 630(b) restricts the application of the ADEA to those "employers" who employ twenty or more workers. The purpose of this provision can only be to reduce the burden of the ADEA on small businesses. Given this evident limitation, it would be incongruous to hold that the ADEA does not apply to the owner of a business employing, for example, ten people, but that it does apply with full force to a person who supervises the same number of workers in a company employing twenty or more. *See Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir.1993) ("If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees."). Such personal liability would place a heavy burden on those who routinely make personnel decisions for enterprises employing twenty or more persons, and we do not read the statute as imposing it. Instead, we read § 630(b) as an unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability for the employer. *See id.* at 587–88; *see also York v. Tennessee Crushed Stone Ass'n,* 684 F.2d 360, 362 (6th Cir.1982). Employer liability ensures that no employee can violate the civil rights laws with impunity, a safeguard that has proven sufficient with respect to Title VII, the ADEA's closest statutory kin. *See Harvey v. Blake,* 913 F.2d 226, 227–28 (5th Cir.1990) (holding that the similar provisions in Title VII, 42 U.S.C. § 2000e(b), mean that individuals acting as employer "agents" will be liable in their official capacities only); *Padway v. Palches,* 665 F.2d 965, 968 (9th Cir.1982) (same).[1] We

---

1. An employee, however, may not be shielded as an employer's agent in all circumstances. We address here only personnel decisions of a plainly delegable character. *See Paroline v. Unisys*

*Corp.,* 879 F.2d 100, 104 (4th Cir.1989) (disputed issue of fact with respect to personal liability under Title VII in a sexual harassment setting),

therefore hold that the ADEA limits civil liability to the employer and that Fennessey, as a Marvel employee, is not a proper defendant in this case.

### III.

Appellate courts have been cautioned not to immerse themselves in the minutiae of the various proof schemes set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. The question before us is a straightforward one—whether plaintiffs successfully demonstrated that they were the victims of age discrimination on the part of Marvel. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

Birkbeck and Richardson contend that they both introduced evidence sufficient to prove such discrimination. They note that the district court was required to view the evidence in the light most favorable to them and that their evidence, when so viewed, would have supported the jury's findings. Specifically, plaintiffs contend that the district court failed to place enough weight on their statistical evidence, was too dismissive of the comment made by Fennessey, and ignored other testimony which was supportive of their claim.

We cannot agree. When viewed in its entirety, this case is plainly one about economic problems causing layoffs, not one of animus leading to the discharge of employees based on age. We agree with the district court that plaintiffs provided only weak evidence of discrimination while defendants presented undisputed evidence that the cutbacks at Marvel were driven by the company's economic difficulties.

### A.

■ We begin by examining plaintiffs' evidence in some detail. Plaintiffs argue that statistical evidence demonstrates the presence of discriminatory practices at Marvel. The plaintiffs' data, however, simply involved too small a sample size to have any probative value here. Richardson and Birkbeck were

part of a group of fifteen individuals terminated by Marvel in 1989. Of those fifteen, eleven were part of the company's collective bargaining unit, meaning that the choice of who would be laid off was not dictated by Marvel management. Plaintiffs are thus left to derive statistical significance from the layoffs of only the four individuals not in the collective bargaining unit. This is a difficult task, given that small changes in the numbers will have a potentially huge effect on the statistical showing. We think it improper to rely on the results of statistical analyses undertaken in these circumstances. *See Palmer v. United States*, 794 F.2d 534, 539 (9th Cir.1986) (holding that plaintiff's sample sizes of between five and thirteen were "too small to have any predictive value" and must be disregarded); *see also Shutt v. Sandoz Crop Protection Corp.*, 944 F.2d 1431, 1434 (9th Cir.1991).

Plaintiffs attempt to avoid this problem by introducing evidence showing that the probability of Richardson and Birkbeck both being randomly dismissed without the involvement of some age animus was small. However, the likelihood that one or two particular individuals will be laid off will always be rather small, given that the individual will always be the smallest possible unit of the larger group. The evidence thus falls short of establishing any significant pattern of discriminatory employment practices throughout an entire work force. *See Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1423 (9th Cir.1990). In fact, the statistical evidence fails to demonstrate any discriminatory trend. Plaintiffs' own expert conceded that, under several statistical measures, the Fisher Exact Test and the Willcoxin Test, there was no significant connection between age and the four individuals laid off. We accordingly hold that the jury was not entitled to rely on plaintiffs' statistical proffers.

### B.

■ Fennessey's statement that "there comes a time when we have to make way for younger people" is similarly irrelevant. It is undisputed that the statement was made

*vacated on other grounds*, 900 F.2d 27 (4th Cir.    1990).

over two years before the discharge of Birkbeck and Richardson. This remoteness in time makes it inappropriate to use Fennessey's statement as evidence of age discrimination. *See Phelps v. Yale Sec., Inc.,* 986 F.2d 1020, 1026 (6th Cir.1993) (finding statements made approximately a year before the layoff at issue too remote "to have influenced the termination decision"); *Guthrie v. Tifco Indus.,* 941 F.2d 374, 379 (5th Cir.1991) (same). The fact that Fennessey made such a statement on only one occasion further supports this conclusion. *See Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989) (holding that a solitary remark regarding age was insufficient to create an issue of material fact for purposes of avoiding summary judgment).

More importantly, the statement in itself creates no inference of age bias. Fennessey's comment reflects no more than a fact of life and as such is merely a "truism[ ]" that carries with it no disparaging undertones. *Smith v. Flax,* 618 F.2d 1062, 1066 (4th Cir.1980); *see also Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438 (9th Cir.1990) (holding that certain statements unconnected to the employment decisionmaking process are simply stray remarks that do not demonstrate discriminatory intent); *Smith v. Firestone Tire & Rubber Co.,* 875 F.2d 1325, 1330 (7th Cir.1989) (same). Moreover, statements about age may well not carry the same animus as those about race or gender. Unlike race or gender differences, age does not create a true we/they situation—barring unfortunate events, everyone will enter the protected age group at some point in their lives. Fennessey, at 52, was himself in the protected category. His remark should be seen for the non-actionable reflection on generational passage that it was. *See EEOC v. Clay Printing Co.,* 955 F.2d 936, 942 (4th Cir. 1992).

## C.

■ Plaintiffs' remaining evidence is no stronger. Birkbeck was fired when the entire aluminizing department at Marvel was shut down. There is no evidence indicating that aluminizing department workers holding jobs similar to Birkbeck's were retained while he was not. In fact, the evidence clearly demonstrates that all but one worker in the aluminizing department was laid off.[2] Moreover, as the district court pointed out, it would make little sense for Marvel to shut down an entire twelve person department— and contract out its business—simply to rid itself of that department's 62 year old supervisor. In fact, both sides agree that the aluminizing department was experiencing significant difficulties in, among other things, applying a uniform aluminizing coat on the inside of the bulbs. As a result, we cannot identify any significant evidence supporting Birkbeck's claim of age discrimination.

■ Richardson's evidence is also tenuous. While it is true that some younger supervisors were retained after Richardson was fired, undisputed evidence also indicates that a majority of the remaining supervisors were in the protected class. Even if some of the 55–year old Richardson's duties were assumed by a younger individual, that event is hardly dispositive. In a reduction of work force case, the fact that the duties of a terminated older employee were assumed by a younger individual is not conclusive of age bias. *See Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1167 (8th Cir.1985). The same rule applies to replacement cases as well, where the mere fact of replacement by a younger employee is not dispositive of age discrimination. *See Chappell v. GTE Prod. Corp.,* 803 F.2d 261, 267 (6th Cir.1986). If it were, it would transform the ADEA into something akin to a strict seniority protection system.

Moreover, it remains an open question whether any younger supervisors actually assumed Richardson's tasks. Marvel maintained that Richardson held a position differ-

---

**2.** The one employee was retained to conduct experiments in the hope that the aluminizing department could eventually be reopened. Marvel was not required to keep Birkbeck in place of this one employee or to transfer Birkbeck to another post. *See Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 942 n. 6 (6th Cir.1987). The aluminizing department was apparently reopened briefly several months later; however, continuing difficulties resulted in it being shut down again.

ent from all of the younger supervisors and that when his position was eliminated, the duties attached to it were combined with another supervisory position held by a 53–year old manager, Mr. Hayes. Richardson maintained that, notwithstanding a substantial salary differential, his position and those of younger supervisors were more comparable. What is clear, however, is that Fennessey had always believed that Richardson and Hayes were the only two supervisors who exercised similar general management responsibilities and therefore that a cost reduction would necessitate the elimination of one of those two jobs. Indeed, Fennessey originally wanted to lay off Hayes, but changed his mind after learning that Hayes had technical skills that Richardson did not possess. While Richardson contends that a long absence due to illness had already led to his demotion from the position Marvel claimed it was eliminating, his evidence, if credited, would still not suffice to recast Fennessey's belief in a discriminatory light or to render Marvel's decision anything other than an economic one. *See St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) (holding that rejection of defendant's claimed nondiscriminatory reason does not compel a finding for plaintiff).

### D.

■ In contrast to plaintiffs' proffers, Marvel provided substantial support for its claim that the layoffs here were motivated purely by economic concerns. At trial, Marvel introduced undisputed evidence that it was experiencing economic hardship. Marvel was among the smaller companies in the lighting industry and had a market share of under one percent. For several years preceding the layoffs in question here, the larger companies in the lighting industry had engaged in stiff price competition. As a result, consumer prices actually began declining after 1987, making price increases by a small company such as Marvel impossible. At the same time, however, Marvel was experiencing increased costs for both labor and raw materials. Marvel therefore decided to low-

er its overhead by reducing payroll costs where possible and by shutting down the aluminizing department. Marvel claimed that these decisions led directly to the termination of Birkbeck and Richardson.

We see no basis for believing that this argument is pretextual. In fact, Marvel's hiring practices make a finding of pretext even less plausible. Fennessey hired a 54–year old worker at approximately the same time he made his allegedly discriminatory statement, and had hired a 60–year old worker several years before that. Such hiring practice is significant. As we have stated, "employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing." *Proud v. Stone,* 945 F.2d 796, 798 (4th Cir. 1991); *see also Lowe v. J.B. Hunt Transp., Inc.,* 963 F.2d 173, 174–75 (8th Cir.1992). Plaintiffs have not introduced any evidence to convince us otherwise.

### IV.

■ Given the undisputed evidence regarding Marvel's economic circumstances, its past hiring practices, and the weakness of plaintiffs' claim, the company's actions can only be viewed as a rational business decision that courts may not upset. *See Abbott v. Federal Forge, Inc.,* 912 F.2d 867, 875–76 (6th Cir.1990); *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986). The ADEA was not intended to obstruct the ability of a commercial enterprise to make necessary adjustments in the face of economic challenges. Marvel's layoff decisions here reflected business realities, not age discrimination, and the district court properly granted judgment as a matter of law.[3] Its judgment is hereby

*AFFIRMED.*

---

3. Although the district court did not rule on defendants' new trial motion, in light of the judg-

ment as a matter of law entered in their favor, we see no reason to remand for a ruling on that

motion.  We similarly find no merit in plaintiffs'
challenges to the district court's evidentiary rul-

