**Marian STEPHENS, Plaintiff,**

v.

**KAY MANAGEMENT CO., INC., et al., Defendants.**

Civ. A. No. 95cv470–A.

United States District Court, E.D. Virginia, Alexandria Division.

Dec. 7, 1995.

---

Candace S. McCall, Fairfax, Virginia, for Plaintiff.

David M. Estabrook, Gordon, Estabrook & Yenas, McLean, Virginia, for Defendants.

## MEMORANDUM OPINION

PAYNE, District Judge.

Marian Stephens instituted this action against Kay Management, Inc. ("Kay Management"), her employer, and Susan Pool ("Pool"), her immediate supervisor. In Count I of the Complaint, Stephens alleges discrimination in violation of Section 102(b)(5)(A) of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(b)(5)(A)

and seeks redress pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117, which incorporates by reference Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5.[1] This case is before the court on Pool's Motion for Summary Judgment.

## STATEMENT OF FACTS

Stephens, a 40–year old female, was employed as assistant resident manager of the Pinewoods Plaza Apartments in Fairfax County from 1983 until 1988, and as the resident manager from 1988 until her employment was terminated on December 31, 1993. Kay Management, which is in the business of managing apartments and other residential properties and employs over 500 people, took over supervision of the Pinewoods Plaza Apartments in February 1992. Pool, who was then employed by Kay Management, worked as the property manager, and was Stephens' supervisor from April 1993 until the termination of Stephens' employment in December.

In February 1992, Stephens suffered a stroke which caused partial paralysis and left her with a weak left leg. She was, however, able to climb stairs one at a time in order to inspect apartments and to walk the grounds of the complex. The Complaint alleges that Pool appeared to be uncomfortable in Stephens' presence and that, on several occasions, Pool told Stephens to let Michael Wernick, a male employee of Kay Management, "be your legs" or "do the walking for you" because "he's younger than you." Stephens also alleges that, notwithstanding her desire and ability to do so, Pool frequently refused to allow Stephens to accompany Pool and Wernick on their walking tours and inspections of the complex. Shortly thereafter, Pool allegedly began complaining that Stephens could not do her job because of the "handicap." According to Stephens, Pool never became aware of how rapidly Stephens, in fact, was recovering from the stroke because Pool refused to allow Ste-

---

**1.** Count II of the Complaint may be read as also asserting claims against both Kay Management and Pool under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq.* However, Stephens eschews any such reading of Count II, contending, instead, that the mention of Pool there is solely to support the claim for punitive damages against Kay Management.

phens along on the inspections of the complex.

On November 19, 1993, the area manager, Peggy Brosnan, and Pool told Stephens that they believed she was physically unable to perform the "outside" duties of the job and asked Stephens to resign. Notwithstanding Stephens' protests and the fact that she had managed the property for ten years without a single complaint, the termination was to be effective January 1, 1994. Stephens never received a warning or counseling for poor performance, both of which are required by the employment policies of Kay Management.

After Stephens left, her husband was told that Wernick had bragged that Pool had been trying to find a way to fire Stephens for some time and "just hadn't found a way to do it earlier." Kay Management subsequently hired a person twenty years younger than Stephens to fill the resident manager position.

Pool seeks summary judgment on the ground that, under the decision in *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir.1994), individuals making personnel decisions of a plainly delegable character cannot be held personally liable under the ADA. This rule, says Pool, means that she is not a proper defendant in this action. For the reasons set forth below, the Motion for Summary Judgment is granted and the action is dismissed as to Pool.

## DISCUSSION

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

This motion presents the purely legal issue whether an individual supervisor may be held personally liable as an "employer" under the ADA for alleged discrimination in employ-

ment decisions. It is therefore properly resolved on summary judgment.

■ When called upon to interpret the ADA, other courts often have looked to the Age Discrimination in Employment Act ("ADEA")[2] and Title VII of the Civil Rights Act of 1964[3] for guidance. The ADA, ADEA, and Title VII all have virtually identical definitions and liability schemes and all are designed with a common purpose: to prohibit discrimination in employment. Moreover, the ADA itself explicitly recognizes the parallel nature of the statutes by incorporating specifically the remedial scheme set by Title VII. Specifically, the ADA provides that

[t]he powers, remedies, and procedures set forth in [Title VII] shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.

42 U.S.C. § 12117(a). Accordingly, decisions interpreting the ADEA and Title VII provide useful assistance in interpreting similar provisions of the ADA respecting the extent to which a supervisor may be held personally liable for employment decisions.

### 1. Decisions Under The Age Discrimination In Employment Act

■ In this circuit, individuals making personnel decisions of a plainly delegable character are not personally liable under the ADEA. *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994). In *Birkbeck,* the Court of Appeals explained that the language of the ADEA limits liability to the "employer," a term which is defined to mean "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...." 29 U.S.C. § 630(b). According to the Court of Appeals, individual supervisory employees do

---

**2.** 29 U.S.C. § 621 *et seq.*

**3.** 42 U.S.C. § 2000e *et seq.*

not fall within the reach of that definition because:

> [I]t would be incongruous to hold that the ADEA does not apply to the owner of a business employing, for example, ten people, but that it does apply with full force to a person who supervises the same number of workers in a company employing twenty or more.

*Id.* at 510.

Other circuits have adopted similar reasoning to foreclose individual liability of supervisory personnel under the ADEA. *See e.g., Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994) ("[i]f Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees."); *Smith v. Lomax,* 45 F.3d 402, 403–04 & n. 4 (11th Cir.1995) (rejecting individual liability for members of the Board of Commissioners on the grounds that they cannot be considered an "employer" under either the ADEA or Title VII).

### 2. Decisions Under Title VII

Likewise, several district courts in this circuit have applied the reasoning in *Birkbeck* to Title VII to justify dismissal of individual defendants on the ground that supervisory personnel cannot be held individually liable under Title VII for the dismissal of an employee. *Lane v. David P. Jacobson & Co., Ltd.,* 880 F.Supp. 1091, 1095–96 (E.D.Va. 1995) ("Although the holding of the Fourth Circuit was not founded on the Title VII language, the clear implication of the decision in *Birkbeck* was that the Fourth Circuit does not support individual liability for agents of employers under Title VII."). *See also Campbell v. Jackson,* Civil Action Number 94–1064–R, 1995 WL 790975 (Memorandum Opinion, W.D.Va. June 21, 1995); *Mitchell v. RJK of Gloucester, Inc.,* 899 F.Supp. 246 (E.D.Va.1995) (holding in *Birkbeck* applies with equal force to Title VII claims); *Ellers v. ITT Corp., Electro–Optical Division, et al.,* 1994 WL 801482 (W.D.Va.1994) (supervisory

personnel cannot be held individually liable under Title VII).

Following the same rationale, the Courts of Appeals in several other circuits have held that there is no individual liability for personnel decisions under Title VII. *See e.g., Grant v. Lone Star Co.,* 21 F.3d 649, 651–53 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Smith v. St. Bernards Regional Medical Center,* 19 F.3d 1254, 1255 (8th Cir.1994); *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Lankford v. City of Hobart,* 27 F.3d 477, 480 (10th Cir.1994); *Smith v. Lomax,* 45 F.3d 402, 403–04 & n. 4 (11th Cir.1995).

### 3. The Americans With Disabilities Act

The ADA forbids discrimination by any "covered entity," defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. §§ 12112(a); 12111(2). The ADA defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees ... and any agent of such person." 42 U.S.C. § 12111(5)(A). This definition mirrors the definition of "employer" in Title VII and in the ADEA.[4]

■ Title VII, the ADEA and the ADA share a common structure in furtherance of a common purpose. And each statute defines employer, and hence its jurisdictional reach, with reference to a specified number of employees. These threshold requisites reflect in each statute a balance, struck by Congress, between the goals of eradicating discrimination and protecting small enterprises from the hardship of litigating discrimination lawsuits. Several Courts of Appeals have defined the reach of the ADA as respects the individual liability of supervisory employees by reference to the provisions in Title VII and the ADEA which define the term "employer." As the Court of Appeals for the Seventh Circuit explained:

> The ADA's definition of 'employer' mirrors the definitions of 'employer' in Title VII of

---

4. Title VII limits liability to employers with fifteen or more employees. 42 U.S.C. § 2000e(b).

The ADEA limits liability to employers with twenty or more employees. 29 U.S.C. § 630(b).

the Civil Rights Act of 1964 and in the Age Discrimination in Employment Act.... Courts routinely apply arguments regarding individual liability to all three statutes interchangeably. Therefore, we will use other courts' interpretations of Title VII and the ADEA to help us in our decision. *U.S. Equal Employment Opportunity Commission v. AIC Security Investigations Ltd.,* 55 F.3d 1276, 1279–80 (7th Cir.1995). *See also Lenhardt v. Basic Inst. of Tech., Inc.,* 55 F.3d 377 (8th Cir.1995) (using Title VII and the ADEA to interpret a Missouri statute similar to the ADA).

Like the ADEA and Title VII, the ADA includes in its definition of "employer," (meaning a person with fifteen or more employees), "any agent" of such employer. 42 U.S.C. § 12111(5)(A). Stephens correctly asserts that the presence of the term "agent" has been used by some courts to justify imposing liability upon individual supervisory employees, if, as the employer's agent, the supervisor exercises significant control over the plaintiff's hiring, firing and conditions of employment. *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989) (Title VII), *vacated in part,* 900 F.2d 27 (4th Cir.1990); *Hamilton v. Rodgers,* 791 F.2d 439, 442–43 (5th Cir.1986) (Title VII); *Magnuson v. Peak Technical Services, Inc.,* 808 F.Supp. 500, 511 (E.D.Va.1992) (Title VII).

■ Stephens argues that, under *Paroline,* Pool should be held individually liable because she qualifies as an "employer" for purposes of *establishing* liability under Title VII because she, as Kay Management's agent, "serves in a supervisory position and exercises significant control over [Stephens'] hiring, firing or conditions of employment." That argument, however, is at odds with more recent decisions which reflect a clear and growing consensus that supervisors and other employees cannot be held liable under the ADEA or Title VII in their individual capacities, at least, for certain kinds of employment-related decisions. Courts subscribing to that view have reached that result by interpreting the phrase "any agent of such a

person" as merely incorporating the familiar principles of respondeat superior into Title VII and the ADEA, rather than to expose supervisors to personal liability in employment discrimination cases.

For example, in *Birkbeck,* the Fourth Circuit addressed the meaning of "any agent of such a person" in § 630(b) of the ADEA. Rather than reading that language to impose individual liability on the supervisor, the Court of Appeals "read § 630(b) as an unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability for the employer." *Birkbeck,* 30 F.3d at 510. That is, the use of the term "agent" in the ADEA simply underscores the notion of the employer's derivative liability under the common law: an employer may be liable for the intentional torts of its employee if they are committed within the scope of employment. *See also Lenhardt,* 55 F.3d at 380; *Miller,* 991 F.2d at 587. Therefore, the precedential value of that part of *Paroline* which holds that supervisory employees exercising significant control over personnel decisions can be held individually liable, has been curtailed significantly by the Fourth Circuit's subsequent decision in *Birkbeck,*[5] which forecloses individual liability for personnel decisions of plainly delegable nature.

Although *Birkbeck* substantially limited the holding in *Paroline,* it did not completely eviscerate it, because as the Court of Appeals explained, "[a]n employee ... may not be shielded as an employer's agent in all circumstances. We address here only personnel decisions of a plainly delegable character." *Birkbeck,* 30 F.3d at 510 n. 1. The citation for that proposition is *Paroline.* Clearly the Fourth Circuit intended to limit the specific holding in *Birkbeck* to "personnel decisions of a plainly delegable character." Unfortunately, the Court of Appeals did not define the meaning or the scope of that language. However, because *Birkbeck* addressed termination of employment, it established that decisions of that sort were of a "plainly delegable character." After *Birkbeck,* there is no

**5.** In addition, the court in *Paroline* reached its decision by relying in part upon a Fifth Circuit case, *Hamilton v. Rodgers,* 791 F.2d 439, 442

(5th Cir.1986), which has since been abrogated by *Harvey v. Blake,* 913 F.2d 226 (5th Cir.1990).

personal liability under either the ADEA or Title VII for individuals making a decision to terminate employment.

There is no valid reason not to apply the rationale of *Birkbeck* to the ADA. Accordingly, the court holds that individuals who do not independently meet the ADA's definition of "employer" cannot be held liable under the ADA in the making of employment decisions of a plainly delegable character. Consequently, the decision to terminate Stephens' employment is governed by the specific holding in *Birkbeck* and Pool cannot be held individually liable for that decision.

Stephens also argues that the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("1991 CRA"), requires a different result because the 1991 CRA allows successful plaintiffs under Title VII and the ADA to obtain compensatory and punitive damages for intentional discrimination, remedies typically obtained from individuals. Stephens theorizes that, therefore, in enacting the 1991 CRA, Congress impliedly imposed individual liability on supervisory employees. However, as the Seventh Circuit recently determined in *U.S. E.E.O.C.*, 55 F.3d at 1281, the converse theorem obtains.

First, the ADA and Title VII both define "employer" to mean an employing entity, not an individual. It is illogical to conclude that Congress silently intended to change this definition through a subsequent amendment to the remedial portions of the statute. *Id.* at 1281. If Congress had envisioned new and expansive liability for individuals, surely the proper place to make such a fundamental change abundantly clear would have been in the definition of "employer" and not by implication in provisions relating to the nature of recoverable damages. Second, while the 1991 CRA allowed new types of damages, it limited the amount of recovery under Title VII and the ADA by limiting the total amount of compensatory and punitive damages that could be awarded to any complaining party. This limitation is a sliding scale of caps, by which the possible award is increased as the number of employees of a liable party increases. 42 U.S.C. § 1981a(b)(3)(A). Congress enacted no such cap for individuals. If Congress had intended individual liability for compensatory and punitive damages, it would have included individuals in these limitations and discontinued the exemption for small employers. This omission suggests that Congress did not intend individuals to become amenable to personal liability after passage of the 1991 CRA. *Id.* at 1281; *see also Miller*, 991 F.2d at 587 n. 2.

The decision precluding Pool's liability does not mean that supervisory employees are liberated to discriminate in employment decisions with impunity because as the Seventh Circuit noted:

> [t]he employing entity is still liable, and that entity and its managers have the proper incentives to adequately discipline wayward employees, as well as to instruct and train employees to avoid actions that might impose liability.

*U.S. E.E.O.C.*, 55 F.3d at 1282; *see also Miller*, 991 F.2d at 588. That is, by incorporating respondeat superior into the statutory scheme, Congress requires employers to answer for discriminatory acts of its employees, and in this way deters illegal discrimination at all levels of the employment hierarchy. Moreover, individual supervisors remain individually liable for personnel actions which are not of a plainly delegable nature.

Several decisions on which Pool relies, and which are cited in this opinion, have extended the reasoning in *Birkbeck* to preclude individual liability of supervisors for sexual harassment and for the creation of a hostile work environment. *See e.g., Lankford v. City of Hobart*, 27 F.3d 477 (10th Cir.1994); *Grant v. Lone Star Company*, 21 F.3d 649 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Lane v. David P. Jacobson & Co., Ltd.,* 880 F.Supp. 1091 (E.D.Va.1995); *Ellers v. ITT Corp., Electro–Optical Division, et al.,* 1994 WL 801482 (W.D.Va.1994). It is doubtful that *Birkbeck* extends to such circumstances because the claim in *Paroline* involved sexual harassment and footnote 1 in *Birkbeck* appears to have placed the situation in *Paroline* beyond the reach of the holding in *Birkbeck* because it did not involve a "personnel decision of a plainly delegable character." *Birkbeck,* 30 F.3d at 510 n. 1. It is not necessary

here to attempt to set the parameters of "plainly delegable" personnel decisions. Thus, although the decisions in *Lankford, Grant, Lane* and *Ellers* are useful in assessing the applicability of the *Birkbeck* rationale to the ADA, their citation here does not carry the connotation that sexual harassment or hostile work environment situations (no matter what the cause) are personnel decisions of a plainly delegable character.

## CONCLUSION

Because Pool is not amenable to suit in her individual capacity under the ADA and for the reasons stated above, her Motion for Summary Judgment is granted and she will be dismissed as a defendant.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.