60 F.3d 823
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Walter P. MAXWELL, Plaintiff-Appellant,
v.
E-SYSTEMS, INCORPORATED, MELPAR DIVISION, Defendant-Appellee.
 No. 94-1785.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 1, 1995.
Decided: July 5, 1995.
 
 John Michael Bredehoft, Charlson & Bredehoft, P.C., Fairfax, VA, for Appellant.
 Paul Charles Skelly, Hogan & Hartson, L.L.P., McLean, VA, for Appellee.
 Elaine C. Bredehoft, Charlson & Bredehoft, P.C., Fairfax, VA, for Appellant.
 William P. Flanagan, Amy Folsom Kett, Hogan & Hartson, L.L.P., McLean, VA, for Appellee.
 Before HALL, WILKINSON, and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Walter P. Maxwell appeals the summary judgment granted to his employer, E-Systems, Inc., in Maxwell's age and disability discrimination action. We affirm.
 
 
 2
 * E-Systems produces electronics systems and related products. Maxwell has been employed as an engineer with the Melpar division of the company since 1972. Melpar deals largely in defense-related work for the government. Prior to his demotion, Maxwell had been a supervising engineer and, since 1985, the site leader on the CARDINAL project. In this latter role, which was unofficial and for which he received no additional compensation, he was responsible for operations at a customer's site where testing of some sort of equipment was being performed.[1]
 
 
 3
 Maxwell was in charge of the retrieval of a "test unit" in May, 1992. The plan developed by Maxwell and his supervisors was to use automated equipment to approach the unit and then switch to hand tools to retrieve it. Maxwell, however, used automated equipment throughout the process and, according to E-Systems, the unit was damaged and critical test data was lost. Maxwell was orally reprimanded and warned.
 
 
 4
 In January, 1993, Maxwell was in charge of another retrieval effort. Although his supervisor had advised him to use hand tools throughout the process, Maxwell instead used automated equipment. When Maxwell briefly turned away from the coworker who had been relaying hand signals to guide him, the retrieval machine contacted the test unit. This accident was termed "a disaster" by E-Systems. As a consequence, Maxwell was demoted from his supervisory engineer position, and his annual salary was cut by $10,000. His site leader duties were reassigned to 53-year-old Larry Coughenour, and his supervisory duties were assumed by 32-year-old Frank Asencio. Maxwell, who had had serious heart problems in the late 1980s, was 62 years old at the time. In November, 1993, Maxwell filed this action, alleging that his age and/or a perceived disability were motivating factors in the demotion decision.
 
 II
 
 5
 To recover under the Age Discrimination in Employment Act [ADEA],[2] a plaintiff must prove that, "but for the employer's motive to discriminate against the employee because of the employee's age, the employee would not have suffered the [unfavorable employment] action." Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir.1992), cert. denied, 113 S.Ct. 1276 (1993). A plaintiff may prove his case by either direct or indirect evidence or by using the proof scheme originally formulated for Title VII cases. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 239 (4th Cir.1982) (adapting the McDonnell Douglas scheme for ADEA cases). Maxwell's case proceeded along this judicially created proof scheme.
 
 
 6
 In the context of an age discrimination action, the modified McDonnell Douglas scheme places the initial burden of production on the plaintiff to make out a prima facie case of illegal discrimination by establishing[3] that (1) the employee was over the age of 40; (2) he suffered an unfavorable employment action; (3) he was at the time meeting his employer's legitimate expectations; and (4) he was replaced by someone outside the protected class (someone under the age of 40). EEOC v. Western Electric Co., 713 F.2d 1011, 1014 (4th Cir.1983). Establishment of a prima facie case raises a presumption of discriminatory motive, and the burden of production shifts to the defendant to advance a legitimate non-discriminatory reason for the employment action. St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2747 (1993). Once this burden is met by the defendant, the presumption vanishes, and the plaintiff is left with the task of meeting his burden of persuasion on the ultimate question: Did the defendant illegally discriminate against the plaintiff? Id.[4]
 
 
 7
 The district court granted summary judgment to E-Systems on alternative bases. First, the district court ruled that, for purposes of the McDonnell Douglas scheme, Maxwell had been replaced by Coughenour, who was not outside the protected class, and not by Asencio; therefore, the fourth factor of the prima facie case had not been met. Alternatively, the court held that E-Systems' legitimate nondiscriminatory reason for the demotion had not been countered by evidence of pretext and that Maxwell had failed to produce any evidence that his employer's decision was fueled by discriminatory motives. We affirm the judgment of the district court.
 
 III
 
 8
 Our review of the judgment is de novo, and we will affirm only if the record shows no genuine issue of material fact. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.), cert. denied, 115 S.Ct. 67 and 68 (1994). The losing party must point to specific evidence that establishes a triable dispute; mere allegations are insufficient. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We view the evidence in the light most favorable to the non-movant. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir.1990), cert. denied, 498 U.S. 1109 (1991).
 
 
 9
 * The core of Maxwell's theory of ADEA liability is that E-Systems hired Asencio in 1990 with a view to replacing Maxwell and that the test-unit incidents were just a cover for promoting Asencio over him. There should be no question but that damage to the test units, if caused by Maxwell, would constitute a legitimate reason for the demotion. The question is whether Maxwell has probative evidence which, if believed by a jury, would be enough to find that the company's explanation for its action was a pretext for discrimination.
 
 
 10
 In order to proceed beyond the summary judgment stage, Maxwell had to either adduce admissible evidence that (1) the test-unit incidents did not occur as claimed by E-Systems, or (2) if the incidents did occur as claimed, they were merely a cover for discrimination. If there was enough evidence to raise a genuine question regarding whether the incidents occurred, then the stated reasons for the demotion could be found to have been pretextual, and from this, in conjunction with the prima facie case, a factfinder could "infer the ultimate fact of discrimination." St. Mary's Honor Ctr., 113 S.Ct. at 2749. Even in the absence of sufficient evidence to raise a genuine issue about the facts underlying the stated reason for the demotion, Maxwell could still survive a motion for summary judgment by coming forth with evidence that the proffered reason, however facially valid, was merely a cover for discrimination. See id. at 2747-48. Our review of the record convinces us that Maxwell fails on both points.
 
 B
 
 11
 As a preliminary matter, we first address Maxwell's claim that his inability to obtain some evidence in discovery should alter how we approach our review of the judgment. Because of CARDINAL's classified status, Maxwell was unable to discover and use information such as the identity of the CARDINAL customer, the nature of the "test unit" and what its retrieval entailed, and the identity of the customer's personnel present at the retrieval attempts. He does not contend that he should have been given access to this information, and he has never sought to compel its disclosure. Instead, he suggests that E-Systems should be precluded from relying on the claim of "legitimate business justification" for the demotion because his ability to counter the company's defense is so dependent on undiscoverable information.
 
 
 12
 Maxwell's dilemma is the "regrettable consequence" that flows from the judicially recognized privilege for state secrets; "one of the parties' litigation position suffers from its inability to discover and present all of the facts it might seek." In re Under Seal, 945 F.2d 1285, 1289 (4th Cir.1991). The inability of Maxwell to get all that he would have preferred is not grounds for changing the other rules of the game. Very simply, he has to do with what he has.
 
 C
 
 13
 We turn, then, to what the record shows with regard to the stated reason for the demotion. According to Maxwell's supervisor, Jack Jeanes, the May, 1992, removal "destroyed" the test unit and was a serious blow to the company's reputation, and, after the "disast[rous]" January, 1993, accident, something had to be done to mollify the customer. Maxwell argues that the evidence is such at this stage of the proceedings that there is at least a genuine issue as to whether he was responsible for the damage to the units or even whether the units were seriously damaged.
 
 
 14
 Company memoranda and deposition testimony from company officials amply buttress E-Systems' contention that Maxwell's demotion and reassignment to the central office were primarily done for reasons of "customer relations." E-Systems maintains that the government client was extremely upset with the damage to the test units and that the demotion was necessary to regain the client's confidence. Maxwell merely points to his own deposition testimony that the customer representative was not upset "and appeared sympathetic" when informed of the January 1993 incident.[5]
 
 
 15
 It is undisputed that Maxwell was in charge, that he used automated equipment instead of the planned hand tools, that the units were damaged, and that the retrieval machine did contact the unit during at least the January, 1993, incident. Maxwell's unsupported allegations are not sufficient to create a genuine issue in regard to what caused the damage, what damage was caused, and how the customer reacted. "Mere speculation or the building of one inference upon another" does not create a genuine issue. Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985). Maxwell has not come forth with enough evidence as would permit a reasonable person to conclude that the units were not seriously damaged during the retrievals or that Maxwell was not responsible.
 
 D
 
 16
 We turn, finally, to Maxwell's claim that the stated reasons were nevertheless not the true reasons for the demotion. Maxwell maintains that summary judgment was inappropriate because he has direct evidence of discriminatory intent. When Maxwell was relieved of his site leader responsibilities, he was replaced by 53-year-old Coughenour rather than the more experienced (and 60-year-old) Scalsky. Maxwell argues that this decision was based on Scalsky's age; one of the company supervisors allegedly commented on Scalsky's age and how it would be nice to have someone in the site-leader position with a little more longevity. This comment constitutes the sum total of direct evidence of discrimination toward Maxwell.
 
 
 17
 Recognition of the effects of age and longevity of employees on long-range company planning is not discriminatory. E-Systems has some 2200 employees, and it only makes sense to make plans to replace older employees. See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511-12 (4th Cir.1994) (employer's "statement that 'there comes a time when we have to make way for younger people' ... creates no inference of age bias [and] reflects no more than a fact of life...."). Maxwell's evidence of discriminatory intent amounts to no more than his subjective belief, and such evidence, without more, is an insufficient basis for relief in the face of proof of nondiscriminatory reasons for the employment action. See Elliott v. Group Medical & Surgical Serv., 714 F.2d 556, 564 (5th Cir.1983), cert. denied, 467 U.S. 1215 (1984).
 
 
 18
 We hold that Maxwell failed to produce enough evidence to create a genuine issue as to the causes and magnitude of the two retrieval accidents and, further, that he failed to produce sufficient evidence of pretext on E-Systems' part. Accordingly, we affirm the judgment of the district court.
 
 AFFIRMED
 
 
 [1]
 The CARDINAL project was classified, so the government customer and the nature of the equipment and testing have not been revealed
 
 
 [2]
 29 U.S.C. Sec. 621 et seq
 
 
 [3]
 We have recently described this initial burden as entailing "pro[of] of a set of facts which would enable the fact-finder to conclude with reasonable probability that in the absence of any further explanation, the adverse employment action was the product of age discrimination." Mitchell v. Data General Corp., 12 F.3d 1310, 1315 (4th Cir.1993) (emphasis in original)
 
 
 [4]
 Maxwell also claims that the company's action was motivated by its perception that Maxwell was disabled as a result of a heart problem. The McDonnell Douglas scheme also applies to Maxwell's claim under the Americans with Disabilities Act [ADA]. Ennis v. Nat'l Assoc. of Business and Educ. Radio, Inc., No. 94-1585, slip op. (4th Cir. May 15, 1995). We have recently held that the fourth factor in the establishment of a prima facie ADA case is that the adverse employment decision "occurred under circumstances that raise a reasonable inference of unlawful discrimination." Id. at 6. However, the only evidence of disability-based discrimination is the company's requirement that he be cleared by his physician before returning to his physically demanding duties at the CARDINAL site. The most favorable inference that Maxwell might squeeze out of this evidence is that E-Systems was concerned about its liability, and even this does not implicate discriminatory intent. The most likely inference, however, is that the company acted out of concern for its employee's well being. The summary judgment on this claim is affirmed for the reasons set forth in the district court's memorandum opinion. Maxwell v. E-Systems, Inc., C/A 93-1518-A (E.D. Va) (June 13, 1994)
 
 
 [5]
 Appellant's opening brief at 38