**Casey Q. BURKE, Plaintiff,**

v.

**COMMONWEALTH OF VIRGINIA, et al., Defendant.**

**Civil Action No. 3:95CV934.**

United States District Court, E.D. Virginia, Richmond Division.

April 25, 1996.

Terry William Raney, Richmond, VA, for plaintiff.

Guy Winston Horsley, Jr., Office Of The Attorney General, Richmond, VA, for defendant.

## FINAL ORDER

SPENCER, District Judge.

THIS MATTER is before the Court on defendants' motion for summary judgment. For the reasons stated in the accompanying Memorandum Opinion, the Court hereby GRANTS the motion in its entirety.

Let the Clerk send copies of this Order to all counsel of record.

It is SO ORDERED.

## MEMORANDUM OPINION

THIS MATTER is before the Court on defendants Commonwealth of Virginia, Ronald Angelone, H. Paul Broughton, Lonnie Saunders, and Thomas Park's motion for summary judgment. On November 15, 1995, plaintiff Casey Q. Burke filed the above-styled action, alleging employment discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"). Defendants have moved for summary judgment, and for the reasons stated herein, the Court will GRANT the motion as to all counts of the Complaint.

## STATEMENT OF FACTS

On January 16, 1993, the Virginia Department of Corrections ("DOC") hired Burke as a correctional officer. After his engagement, the DOC sent Burke to the Academy for Staff Development in Goochland County to obtain certification as a correctional officer. Burke did not receive passing grades—despite being re-tested twice—and, ultimately, was not certified.

Thereafter, Burke informed the DOC testers that he had "a mild form of dyslexia." As a result, the DOC referred Burke to the Center for Learning Potential to discern the nature of his disabilities. At the Center, psychologist Robin Hawks evaluated Burke and determined that the "results of [Burke's]

interest inventory, as well as his cognitive skills and abilities are not consistent with [correctional officer position]." The report also noted Burke's poor communicative skills and stated "that it is difficult for him to be patient, and he gets upset easily when things around him become hectic or tense." Defendant's Exhibit C.

Based on Hawks' report, the DOC concluded that Burke's limitations disqualified him from being a correctional officer. On September 14, 1994, defendant Broughton offered Burke the position of "Motor Vehicle Operator B," which provided the same salary as the correctional officer position. Burke rejected the offer and subsequently the DOC gave him another position with the Augusta Correctional Center. He resigned from this post on August 1, 1995 and filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right to sue letter on August 23, 1995.

## ANALYSIS

### A. The Law of Summary Judgment

A motion for summary judgment may be granted only where "there is no genuine issue as to any material fact" and where the nonmoving party is entitled to judgment as a matter of law. *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985); Fed.R.Civ.P. 56(c). The Court must view the known facts of the case, and the inferences which can be drawn from those facts, in a manner most favorable to the party opposing the motion. *Ballinger v. North Carolina Agr. Extension Serv.,* 815 F.2d 1001, 1004 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). While viewing the facts in such a manner, the Court looks to any affidavits or other specific facts to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

> In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues. Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56© and (e).... Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes.

*Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985).

### B. Discussion of the Merits of Burke's Claims

#### 1. Count 1—Title I of the ADA

■ The Fourth Circuit has recently held that the *McDonnell Douglas* scheme of proof applies to cases that arise under the ADA. *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55 (4th Cir.1995) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Therefore, to maintain a claim of discrimination under the Title I of the ADA, Burke must establish four elements of a *prima facie* case. These elements are: (1) Burke is a member of the protected class under the statute; (2) he was discharged; (3) at the time of discharge he was performing his job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that would support a reasonable inference of discrimination. *Ennis,* 53 F.3d at 58. Providing insight into what constitutes a disability for ADA purposes, the *Ennis* court indicated that disability status must be determined on a case-by-case basis. *Id.* at 60 (citing Rehabilitation Act cases for guidance).

#### *Burke is not a Member of a Protected Class*

■ The ADA provides that:

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Burke suffers from Attention Deficit and Hyperactivity Disorder and Developmental Expressive and Receptive Language Disorder. Defendants first argue that the protected class defined under the statute does not cover Burke because his disabilities "do not substantially limit his major life activity," defeating Burke's *prima facie* case. For this proposition, defendants cite various Rehabilitation Act cases which hold that the inability to perform a single, particular job does not constitute substantial limitation of major life activity.

For example, the Fourth Circuit recently rejected a former deputy sheriff's Rehabilitation Act claim because the appellant did not have a disability within the meaning of the statute, and thus, was not a member of a protected class. *Hughes v. Bedsole*, 48 F.3d 1376 (4th Cir.1995). In *Hughes,* the appellant had been given comparable positions within the sheriff's department—jail staff sergeant and road patrol officer. The Fourth Circuit found that Hughes' life activity was not substantially limited as she was not barred from law enforcement generally.

Similarly, in *Smaw v. Commonwealth of Va. Dept. of State Police*, 862 F.Supp. 1469 (E.D.Va.1994), this Court held that the ADA did not cover a former state trooper's claim of discrimination where the plaintiff had been given comparable alternative employment. There, the plaintiff contended that she was discharged as a result of her disability—obesity—when the department reclassified her position from trooper to dispatcher. To the contrary, the Court found that her life activity was not substantially impaired because the plaintiff was still able to perform duties in the field of law enforcement.

The case at bar requires the same result because the DOC provided Burke with comparable, alternative positions, defeating any claim of impaired life activity. Therefore, the Court finds that Burke does not have a disability within the meaning of the ADA.

### Burke Cannot Adequately Perform the Essential Functions of a Correctional Officer

Moreover, even if the Court were to find that plaintiff has a disability under the ADA, Burke cannot overcome the fact that he cannot adequately perform one of the essential functions of the correctional officer position—being able to read and comprehend written and oral instructions in potentially life threatening situations.

Burke states that he can do the job adequately if he is given some accommodations. Indeed, in some situations the ADA requires employers to provide reasonable accommodations that would allow a claimant to perform the essential the functions of a job. *Foster v. Geopure Systems & Services, Inc.,* 1995 U.S.Dist. LEXIS 17937, 1995 WL 852074 (E.D.Va.1995). Yet, Burke has named not a single accommodation that would allow him to perform the duties of a correctional officer adequately.

Burke's Complaint also suggests that the defendants unlawfully failed to provide the testing for the correctional officer position in a manner accessible to persons with disabilities. However, the ADA regulations make clear that an employer is not prohibited from using employment tests that may screen out persons with disabilities if the test measures ability to perform the position. 29 C.F.R. § 1630.10. Burke was subjected to tests that measured whether he is competent to read and comprehend written materials consistent with the published list of abilities required for the position of correctional officer. Such tests that are lawful under the ADA.

In sum, Burke has not demonstrated any of the elements of a *prima facie* case under the ADA. Summary judgment will be granted in favor of defendants on Count 1.

### 2. Count 2—Title II of the ADA
### *Burke Was Not Denied Access to Public Services or Benefits*

In Count 2 of his Complaint, Burke claims that he was denied the right to participate in or receive public services, programs, or activities, in violation of Title II of the ADA. As a preliminary matter, Title II only provides injunctive relief, not the compensatory or

punitive damages Burke seeks. More importantly, a plaintiff bears the same burdens under Title II that he does under Title I. Since the same standards apply, Count 2 must be dismissed for the same reasons as Count 1. Put simply, Burke has not alleged a *prima facie* case of discrimination.

### 3. Count 3—Retaliation

In Count 3 of his Complaint, Burke claims that defendants have retaliated against him in violation of the ADA. The ADA provides protection for individuals who have been the victims of an employer's retaliatory action because those individuals raise complaints under the statute. The Complaint alleges retaliation in the form of denial of examinations, accommodations, and preferred employment—the same wrongs alleged in Counts 1 and 2.

Intuitively, Burke cannot recover for both retaliation and discrimination for the same wrongs. Consequently, the Court must search the record for an "adverse" employment action that could be construed as retaliatory. The retaliatory action cannot be Burke's rejection for the correctional officer position because Burke filed his original EEOC complaint on July 12, 1994—*after* he was denied the position on December 20, 1993. Further, the DOC gave Burke two alternative positions within the department, one of which he rejected. He accepted the second position and then left voluntarily. Since Burke was not terminated, he cannot maintain a legitimate claim of retaliatory termination.

■ The only possible adverse action came in July of 1995 when Burke was rejected for the position of Boiler Operator. Defendants aver the selection panel did not choose Burke because he had little or no related experience, not because the panel was retaliating against him in response to his EEOC complaint. Burke has produced nothing to demonstrate otherwise. In short, Burke has failed to show a *prima facie* case of retaliation because he has shown no causal connection between any adverse employment action and his ADA claim. *Harmer v. Virginia Electric and Power Co.*, 831 F.Supp. 1300, 1308 (E.D.Va.1993).

### C. The Individual Defendants are not Proper Parties

■ Not only do Burke's claims lack merit, the individual defendants are not proper parties. The growing trend in this circuit demonstrates employment discrimination statutes do not subject individuals to liability for plainly delegable duties. *See, e.g. Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994). In *Birkbeck,* the Fourth Circuit held that an individual who did not independently meet the ADA's definition of "employer" could not be held liable under the Age Discrimination in Employment Act in the making of employment decisions of a delegable character. *Id.* Likewise, district courts in this circuit have applied the *Birkbeck* reasoning to justify dismissal of individual defendants in cases predicated on other employment discrimination statutes. *See, e.g., Lane v. David P. Jacobson & Co., Ltd.,* 880 F.Supp. 1091, 1095–96 (E.D.Va.1995) (extending *Birkbeck* rationale to Title VII cases); *Stephens v. Kay Management Co., Inc.,* 907 F.Supp. 169 (E.D.Va. 1995) (extending *Birkbeck* rationale to ADA cases).

Burke contends that *Birkbeck* should not apply in this case because the individual defendants happen to be employees of the state. However, the Court can see no reason why *Birkbeck*'s rationale should be limited to private employers. The bottom line is that there is a growing consensus that employees cannot be held liable under the ADEA, Title VII, or the ADA for certain kinds of employment-related decisions. And since Burke has indicated nothing to demonstrate that the individual defendants made personnel decisions of non-delegable nature with respect to his employment, the individuals are not proper parties.

### D. Punitive Damages are Not Available

Here, the Court notes that Burke seeks punitive damages as part of his relief in this case. As shown above, the only proper defendant is the Virginia Department of Corrections. The simple fact of the matter is that punitives are not available under the

ADA against a governmental agency. 42 U.S.C. § 1981a(b)(1).

### E. Defendants are Entitled to Immunity

Finally, defendants are entitled to immunity from damages because of their good faith efforts to identify and make available accommodations for Burke's disabilities. Under 42 U.S.C. § 1981a, employers are entitled to immunity if they make such a good faith showing. Again, defendants are entitled to summary judgment because Burke has offered nothing to demonstrate that the defendants did not act in good faith.

### CONCLUSION

In short, defendants are entitled to summary judgment on Counts 1 and 2 of the Complaint because Burke cannot demonstrate a *prima facie* case of discrimination under the ADA. In addition, Burke has failed to identify a causal connection between an adverse employment action and the complaint he filed with the EEOC. As such, Count 3 of the Complaint is dismissed because Burke has not stated a *prima facie* case of retaliation.

Moreover, the Court finds that (1) the individual defendants are not proper defendants because they performed only plainly delegable duties with respect to employment measures taken with Burke; (2) punitive damages are not available with respect to government agency defendants, *i.e.*, the DOC; and (3) the defendants are entitled to immunity as a result of the good faith they showed in attempting to make reasonable accommodations for Burke.

An appropriate Order shall issue.