**Elaine M. RUSH, Plaintiff,**

v.

**VIRGINIA DEPARTMENT OF TRANSPORTATION, et al., Defendants.**

**No. Civ.A. 6:01CV0040.**

United States District Court, W.D. Virginia, Lynchburg Division.

June 18, 2002.

---

John E. Davidson, Davidson & Kitzmann, PLC, Charlottesville, VA, for plaintiff.

Sydney E. Rab, Ondray T. Harris, Guy Winston Horsley, Jr., Office of Atty. Gen., Richmond, VA, for plaintiffs.

## MEMORANDUM OPINION

MOON, District Judge.

This Matter is before the Court on Plaintiff's motion for a new trial, pursuant to Rule 59 of the Federal Rules of Civil Procedure. For the reasons stated below, Plaintiff's motion is GRANTED. The parties are instructed to contact the Clerk's Office regarding scheduling for a new trial.

## I.

This matter involves a claim of gender discrimination in hiring. Plaintiff, Elaine Rush, is a resident of Cumberland County, Virginia, who asserts that she was discriminated against because she is a woman, in violation of Title VII of the Civil Rights Act of 1964 and in violation of 42 U.S.C. § 1983. Defendants are the Virginia Department of Transportation ("VDOT" or "the Department") and Mr. John G. Chernault, a VDOT employee who was Plaintiff's supervisor when she was a part-time, hourly crew member with VDOT. Mr. Chernault also served on the VDOT hiring committee that declined to hire Plaintiff for a full-time position with the Department.

In March of 2000, Ms. Rush sought and applied for a full-time, salaried position with VDOT. The Department, before interviewing the candidates, compiled a "Selection Criteria Sheet," on which Ms. Rush was rated as "highly competitive." Two of the men hired over Ms. Rush were labeled "minimally qualified." In a November 1999 evaluation of Plaintiff, Mr. Chernault wrote, "She is very knowledgeable of what is to be done on [the] job and would make a good employee for VDOT when there is an opening." When Plaintiff applied for a full-time position less than a year later, however, Mr. Chernault asserted that he wouldn't hire Plaintiff "if [he] didn't have to." To explain this reversal, Mr. Chernault offered two reasons. First, he stated that Ms. Rush failed to provide VDOT with the requisite two-weeks notice before leaving her part-time job with the Department. Second, he explained that Plaintiff failed to make herself available for snow-removal duty on two occasions, after she had volunteered to be on the on-call, emergency snow-removal team.

Ms. Rush countered that both reasons were pre-textual. She claimed that she

asked for permission to leave without providing two-weeks notice, and that Mr. Chernault told her that the current work level was light and that the operating budget was strained. Therefore, no notice would be necessary. Second, she alleged that she informed Mr. Chernault that she could only perform snow removal duty if it did not conflict with her job outside of VDOT. On both occasions when Mr. Chernault called, Plaintiff had mid-week conflicts. Finally, even if these incidents were strikes against her candidacy, Ms. Rush insisted that candidates who were hired over her had serious negatives that Mr. Chernault was quick to forgive. One hired candidate, for example, had been convicted of theft and had recently been released from prison.

With this evidence, the parties prepared to go to trial on April 24–25, 2002. Shortly before the trial was to begin, on April 23, Defendants filed a motion in limine to exclude certain evidence relating to Mr. Chernault. Specifically, Defendants sought to exclude evidence:

1) that Mr. Chernault, kept *Playboy* and *Penthouse* magazines in his VDOT truck, and instructed Plaintiff to clean out the truck, but not to throw out the magazines;

2) that Mr. Chernault allegedly told her, "Lean over while I'm talking to you and put those things on my desk" or "Get a little closer and lay those things on my arm," referring to Plaintiff's breasts;

3) that Mr. Chernault suggested that she was having a sexual relationship with one of her co-workers, Nathaniel "Jeep" Eanes, telling her on one occasion, "Here comes Jeep. If you really want to make him smile, why don't you give him some of that stuff."

On April 24, 2002, on the morning of the first day of the trial, this Court granted Defendant's motion, and the evidence was excluded. After observing the trial and reconsidering the issue, this Court finds that its original decision was in error. Furthermore, the Court concludes that this error was not harmless, and that Plaintiff is therefore entitled to a new trial.

## II.

Rule 59(a) of the Federal Rules of Civil Procedure permits a court to grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Because Plaintiff's motion for a new trial is based on her claim that the Court wrongfully excluded evidence, the Court turns to Rule 61, the harmless error rule. Rule 61 states, "No error in either the admission or the exclusion of evidence ... is ground for granting a new trial .... unless refusal to take such action appears to the court inconsistent with substantial justice." These rules establish a two-prong test for considering Plaintiff's motion for a new trial. First, the Court must determine whether its initial order on the motion in limine was in error. Second, even if the Court finds that its ruling was in error, Plaintiff is not entitled to a new trial if that error "did not affect [Plaintiff's] substantial rights, and therefore [was] harmless." *See Taylor v. Virginia Union Univ.*, 193 F.3d 219, 235 (4th Cir. 1999). *See also Mullen v. Princess Anne Vol. Fire Co., Inc.*, 853 F.2d 1130, 1135 (4th Cir.1988).

## A.

On the first question, this Court is compelled to conclude that its initial ruling on the motion in limine was in error. The question presented in the motion was whether statements and other evidence of Mr. Chernault's alleged sexism would be admissible after Plaintiff's sexual harass-

ment claim had been dismissed. Plaintiff argued that the evidence was still highly relevant to her claim of gender discrimination. Defendants countered that because the sexist statements did not directly relate to the hiring decision at issue in the case, that the evidence should be excluded.

The Fourth Circuit has not specifically articulated a rule on whether evidence of sexism, not directly related to the specific hiring decision in question, is admissible in a Title VII gender discrimination case. In cases of age discrimination, the Fourth Circuit has ruled that "[A defendant's] statement that 'there comes a time when we have to make way for younger people' is simply irrelevant..... [T]he statement in itself creates no inference of age bias." *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (citing *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990), which held that "statements unconnected to the employment decisionmaking process are simply stray remarks that do not demonstrate discriminatory intent.")

In its initial ruling on Defendant's motion in limine, this Court cited to the Fourth Circuit's rule on age discrimination cases, and applied that holding to the evidence in this gender discrimination case. The *Birkbeck* opinion, however, explains that gender and age discrimination cases cannot be analogized to each other on this point. Writing for an unanimous court, Chief Judge Wilkinson explained, "[S]tatements about age may well not carry the same animus as those about race or gender. Unlike race or gender differences, age does not create a true we/they situation—barring unfortunate events, everyone will enter the protected age group at some point in their lives." 30 F.3d at 512.

Thus, it is appropriate to turn to the Fourth Circuit's rulings on racial discrimination for guidance. When a plaintiff alleges racial discrimination in a hiring decision, "The use of racially offensive language by the decisionmaker is relevant as to whether racial animus was behind the membership decision, and [is] proper evidence for the jury to consider." *See Mullen v. Princess Anne Vol. Fire Co., Inc.* 853 F.2d 1130, 1133 (4th Cir.1988). Applying this standard to Ms. Rush's gender discrimination claim, this Court should admit into evidence the allegedly sexist statements, actions or comments made by Mr. Chernault. Such evidence is relevant as to whether Plaintiff's sex was a motivating factor behind Defendant's hiring decision.

In its April 24th ruling, the Court observed, "In this case, Defendants' motion focuses on alleged statements by Mr. Chernault that might be characterized as rude, boorish, or sexist. Nothing in these statements, however, relates to Plaintiff's job performance or her qualifications for full-time employment." In short, this Court's order was based on the false premise that the question of whether Mr. Chernault was a sexist could be wholly separated from the issue of whether he had discriminated against Plaintiff because of her sex. After observing the trial, this Court now finds that the issue of Mr. Chernault's alleged sexism was inextricably linked to Plaintiff's claim of discrimination.

Various excerpts from the trial transcript are demonstrative of this fact. For example, during his opening statement, counsel for Defendants stated, "Johnny Chernault's area headquarters had three [women]—six times what the average is. Johnny Chernault had a role in hiring each of these women—he either served on a panel or had input into it.... Mr. Chernault is not a sexist." With this statement, Defense counsel properly framed one of the central issues in the case for the jury. If there is no evidence that Mr. Chernault

is a sexist—and in fact, if all the evidence suggests that he has a progressive attitude towards women—then it would be illogical to conclude that he discriminated against Plaintiff on the basis of her gender.

Throughout the trial, defense counsel introduced evidence of Mr. Chernault's role in hiring other women for various VDOT positions. Obviously, this evidence from other, unrelated hiring decisions was not relevant to the narrow issue of how Ms. Rush was treated on her application for employment. It was relevant, however, to show that Chernault had a progressive attitude towards women and that he was not a sexist.

In his closing statement, defense counsel remarked, "I'd like to turn to Mr. Chernault first, because he has been portrayed as the villian here, which is really a shame, because I think the evidence shows that if anyone was friendly to women in terms of hiring, it was Mr. Chernault.... Mr. Chernault did not have a sex-based motive against Ms. Rush." Defendants further emphasized, "The statistics are rather amazing in terms of Mr. Chernault not being a sexist." With the groundwork on this issue established, Defendants asked the jury to conclude, "So whatever it was that changed John Chernault's mind about [Ms. Rush] and not recommending her, it wasn't her sex—it couldn't have been, that makes no sense...."

By excerpting these quotations from the trial transcript, this Court does not intend to criticize Defendants for bringing the issue of sexism into the case after the Court's ruling on the motion in limine had

attempted to exclude it. On the contrary, these statements make it clear that a central issue in the case—perhaps *the* central issue—was whether Mr. Chernault was a sexist. No order of the Court could change this fact. If the jury were to conclude that Mr. Chernault was not a sexist, then it would "make no sense" to accuse him and VDOT of sex discrimination. Plaintiff had admissible evidence that Mr. Chernault was a sexist. As this Court acknowledged in its order excluding the evidence, this evidence tended to show that Mr. Chernault was "rude, boorish, or sexist." The jury was entitled to consider that evidence, weigh it against the Defendants' evidence on this point, and decide for itself whether or not Mr. Chernault improperly considered Plaintiff's sex in making his hiring decision.

### B.

While this Court's original decision to exclude the evidence was in error, this fact does not mean that Plaintiff is automatically entitled to a new trial. On a motion for a new trial, a court must "disregard any error that did not 'affect the substantial rights of the parties.'" *Mullen*, 853 F.2d at 1135 (quoting Fed.R.Civ.P. 61). Defendants argue that any error the Court made in ruling on the motion in limine was harmless.[1] In support of this point, they first cite to *Taylor v. Virginia Union Univ.*, 193 F.3d 219 (4th Cir.1999) (*en banc*). In *Taylor*, two female patrol officers with the campus police department alleged, among other things, that they

---

1. Defendants, while directing this Court to Rule 61 and the *Taylor* opinion, also suggest that Plaintiff is only entitled to a new trial if she can show that the jury verdict was "against the clear weight of the evidence." *United States v. Tobias*, 899 F.2d 1375 (4th Cir.1990). This standard, however, is inapplicable to the present case. The "clear weight of the evidence" test is to be applied where a

party seeks a new trial under Rule 50(b), "Renewing Motion for Judgment After Trial; Alternative Motion for New Trial." Plaintiff does not argue that she was entitled to a judgment as a matter of law. Rather, she contests that the exclusion of admissible evidence substantially impaired her rights. Her motion, therefore, is to be reviewed under the Rule 61 "harmless error" standard.

were passed over for promotions because of their sex. At her trial, one of the officers, Ms. Johnson, attempted to introduce evidence that: 1) the Chief of Police had stated that another woman "had good pussy;" and 2) that the Chief had sexually harassed another female employee, calling her at home, touching her, and telling her that he had looked down her blouse while standing behind her. *Id.* at 234. The district court ruled that all of this evidence was inadmissible. The Fourth Circuit assumed *arguendo* that the evidence was excluded in error, but concluded that "the abuse constitutes harmless error." *Id.* at 235. As a result, the plaintiff's motion for a new trial was denied.

Defendants allege that Plaintiff's case is factually similar to Ms. Johnson's in *Taylor*, and that the error should be ruled "harmless." The evidence in *Taylor* was that the man promoted over Ms. Johnson "had previously received higher performance evaluations than Johnson and had more military experience than Johnson." *Id.* at 236. Ms. Johnson also scored lower on "written and oral examinations" than the male officer who was promoted over her. *Id.* In addition, the jury heard evidence that "a number of male officers, some with more seniority and experience than Johnson, served regularly . . . without receiving promotion to the rank of corporal until they had been with the Department" for as much as four and one half years. *Id.* Ms. Johnson, in contrast, had only been with the Department for one year and two months. *Id.* After reviewing all of this evidence, the Fourth Circuit stated, "[W]e are firmly convinced that the allegedly erroneously excluded evidence, assuming *arguendo* it was admissible, was simply too weak to have made a difference in the jury's decision." *Id.* at 237.

In contrast, the evidence in Plaintiff's case shows that Ms. Rush was "highly competitive" for the position that she sought, whereas two of the men hired over her were "minimally qualified." She had applied for a full-time position on two previous occasions, and some of her co-workers expected that on this third attempt, she would be selected. At trial, Defendants did not claim that Plaintiff was unqualified for the job, or even that other candidates were more qualified than she was. Rather, Defendants suggested to the jury that Plaintiff's failure to provide two weeks notice was the critical issue. As defense counsel stated in his closing, "[W]hat really killed her, I think, in terms of Mr. Chernault was this no-show for two calls on emergency snow removal."

Plaintiff's case was strong in terms of establishing her credentials for the job. In addition, the jury could have concluded that the Defendants' justifications for refusing to hire Plaintiff were pre-textual. The only piece missing from Plaintiff's case was a motive for Defendants to invent these allegedly pre-textual reasons. As defense counsel pointed out on numerous occasions, there was no direct evidence that Mr. Chernault was a sexist. The excluded evidence, however, supports the conclusion that Mr. Chernault had a history of treating Ms. Rush differently from her co-workers, solely because she is a woman. If a jury believes Plaintiff's testimony regarding Mr. Chernault's lewd comments and the constant presence of *Playboy* and *Penthouse* magazines, then it could conclude that Plaintiff's gender was foremost in Mr. Chernault's mind. A jury could believe that Mr. Chernault's alleged sexism improperly affected his assessment of Plaintiff's capabilities as an employee.

During the trial, Defendants pointed to Mr. Chernault's having been incensed on learning that an earlier VDOT hiring panel selected an African–American male candidate, Mr. John Hurt, over Ms. Rush. When Ms. Rush was not hired, Mr. Chernault

gave up a position on his team rather than let Mr. Hurt work for him. Defendants offered this evidence to suggest that Mr. Chernault did not have a bias against women in making hiring decisions. In fact, he was so outraged that a woman was not hired, that he refused to accept the hired candidate in protest.

The evidence could also be interpreted, however, as proving only that Mr. Chernault was racist as well as sexist. Plaintiff testified that Mr. Chernault stated to her, in the presence of two other witnesses, "Girl, I did the best I could do for you, but there wasn't nothing I could do.... [VDOT Supervisor] Bill King just wanted John Hurt.... Bill King just walked John Hurt through—that dumb ass nigger—he just walked him right through that [interview.]" Considering all of this evidence together, the jury could conclude that Mr. Chernault was so angered by the hiring of an African–American employee, that he preferred to have a woman or no one at all rather than an African–American. For this reason—and not out of any show of solidarity with Ms. Rush—a jury could surmise that Mr. Chernault refused to accept Mr. Hurt as an employee.

In sum, because of Plaintiff's excellent qualifications, the jury might have concluded that Defendants were guilty of making a bad judgment call in a hiring decision, but that they were not guilty of discrimination. As thin as Defendants' allegedly pretextual excuses were, there was almost no evidence before the jury that Mr. Chernault was motived by sexism in offering these excuses. From the jury's perspective, Plaintiff's lack of evidence on this point could have been the deciding factor. This Court cannot conclude, therefore, that the error in excluding Plaintiff's evidence was harmless.

### III.

For the above-stated reasons, this Court finds that the April 24, 2002 ruling on Defendants' motion in limine was in error. Furthermore, this error affected Plaintiff's substantial rights. A refusal to grant a new trial, therefore, would be "inconsistent with substantial justice." Fed.R.Civ.P. 61; *Mullen,* 853 F.2d at 1135.

Plaintiff's motion is GRANTED. The parties are instructed to contact the Clerk's Office regarding scheduling for a new trial.

The Clerk of Court is directed to send a certified copy of this Order to all counsel of record, and is further instructed to return this case to the docket of this Court.

### *ORDER*

This Matter is before the Court on Plaintiff's motion for a new trial, pursuant to Rule 59 of the Federal Rules of Civil Procedure. For the reasons stated in the attached Memorandum Opinion, Plaintiff's motion is GRANTED. The parties are instructed to contact the Clerk's Office regarding scheduling for a new trial.

The Clerk of Court is directed to send a certified copy of this Order to all counsel of record, and is further instructed to return this case to the docket of this Court.